# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

MARKEISHA ELLIOT,                           Case No. 1:21-cv-43
    Petitioner,

    vs.                                      Hopkins, J.
                                            Litkovitz, M.J.

WARDEN, DAYTON                              **REPORT AND**
CORRECTIONAL INSTITUTION,                   **RECOMMENDATION**
    Respondent.


Petitioner, an inmate in state custody at the Dayton Correctional Institution, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition, respondent's return of writ, and petitioner's reply. (Doc. 5, 11, 12). For the reasons stated below, the petition should be denied.

## I. FACTUAL BACKGROUND

The Ohio Court of Appeals set forth the following set of facts leading to petitioner's conviction and sentence:[1]

> {¶2} During an afternoon in May 2017, Tyshara Walker was involved in a physical altercation with an acquaintance after being refused a ride, and she ultimately summoned the police to report the incident. After the altercation, Ms. Walker returned to work and tried to put the matter behind her, but the constant ding of Facebook alerts on her phone distracted her. Like wildfire, word spread about the incident and Ms. Walker's decision to call the police, which attracted the scorn of the Facebook community. Shawnice Johnson chimed in with the moblike chorus, prompting a Facebook back-and-forth between her and Ms. Walker in which the two eventually agreed to "meet up" that evening, mutually understood to be an agreement to fight.

> {¶3} By the time the two met on the corner of Stanton Avenue and Oak Street, the

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Because petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, the state appellate court's factual findings are presumed to be correct. *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

entire neighborhood appeared aware of the looming fight and eager to witness it. Though disputed whether everyone pulled up in cars with Ms. Walker, or if the crowd was already milling about, by the time Ms. Johnson and Ms. Walker met face-to-face, a crowd had gathered (some members even brandishing makeshift, Walking Dead-esque weapons). Among those present in the crowd was Ms. Walker's older sister, Markeisha Elliott.

{¶4} Though initially someone attempted to defuse the situation, the scene quickly devolved into a melee, with Ms. Walker and Ms. Johnson at the epicenter. With punches and kicks flying, the two combatants ultimately tumbled to the ground. Video footage captured on cellphones from that evening reveals that it was then that Ms. Elliott, sitting on the sidelines until this point, advanced over to where her sister and Ms. Johnson wrestled on the ground. She approached the two with a small, pointed object in hand, which Ms. Elliott later acknowledged was a knife. Ms. Elliott then bent over and made a thrusting movement with the hand holding the knife in the direction of Ms. Johnson. In the wake of that blow, Ms. Johnson stumbled to her feet, clutching her neck. The crowd quickly dispersed as the severity of Ms. Johnson's wounds became apparent. Though rushed to the hospital, the knife had punctured Ms. Johnson's left carotid artery; she eventually lost consciousness and later died. After a police investigation, Ms. Elliott was indicted and tried for murder, two counts of felonious assault, and tampering with evidence.

(Doc. 10, Ex. 8 at PageID 117-119).

## II. PROCEDURAL BACKGROUND

### State Trial Proceeding

On May 25, 2017, the Hamilton County, Ohio grand jury returned a four-count indictment, charging petitioner with murder, two counts of felonious assault, and tampering with evidence. (Doc. 10, Ex. 1). Petitioner entered a plea of not guilty. (Doc. 10, Ex. 2).

Following a jury trial, petitioner was found guilty of murder and both counts of felonious assault. The jury found petitioner not guilty of the remaining count of tampering with evidence. On May 22, 2018, petitioner was sentenced to a total aggregate prison sentence of fifteen years to life in the Ohio Department of Corrections. (Doc. 10, Ex. 3).

### Direct Appeal

Petitioner filed a notice of appeal to the Ohio Court of Appeals. (Doc. 10, Ex. 4).

2

Petitioner, through counsel, raised the following single assignment of error in her appellate brief:

> In a murder trial, a criminal defendant is denied the effective assistance of counsel for her defense under the Sixth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution when she testifies that she stabbed the decedent in the neck by accident, but her retained counsel fails to request the trial court to instruct the jury as to the definition of accident, fails to argue accident and instead argues defense-of-another, an inconsistent affirmative defense.

(Doc. 10, Ex. 5).  On September 6, 2019, the Ohio Court of Appeals overruled petitioner's

assignment of error and affirmed the judgement of the trial court.  (Doc. 10, Ex. 8).

## Ohio Supreme Court

Petitioner, through counsel, filed a timely notice of appeal to the Ohio Supreme Court.

(Doc. 10, Ex. 9).  In her memorandum in support of jurisdiction, petitioner raised the same

assignment of error raised on direct appeal as a proposition of law:

> A criminal defendant is denied the effective assistance of counsel for her defense under the Sixth and Fourteenth Amendments to the U.S. Constitution and Article 1, Section10 of the Ohio Constitution when she testifies that she stabbed the decedent by accident but her retained counsel fails to request the trial court to instruct the jury as to the definition of accident, fails to argue accident, and instead argues defense-of-another, an inconsistent affirmative defense.

 (Doc. 10, Ex. 10).  On January 21, 2020, the Ohio Supreme Court declined to accept jurisdiction

over the appeal.  (Doc. 10, Ex. 11).

## Application to Reopen Direct Appeal

Meanwhile, on September 25, 2019, petitioner, through new counsel, filed an application

to reopen her direct appeal, pursuant to Ohio App. R. 26(B).  (Doc. 10, Ex. 12).  Petitioner

argued that appellate counsel was ineffective for failing to raise the following four assignments

of error on direct appeal:

1.  Ms. Elliot's convictions were against the manifest weight of the evidence.

2. The trial court plainly erred in failing to instruct the jury on the inferior degree offense of voluntary manslaughter.

3. Ms. Elliot was denied her rights of due process and of assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution because her trial counsel provided ineffective assistance.

4. Ms. Elliot was denied her rights of due process and of assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution because her appellate counsel provided ineffective assistance.

(*Id.*). On March 12, 2020, the Ohio Court of Appeals denied petitioner's application to reopen.

(Doc. 10, Ex. 14).

Petitioner failed to seek further review with the Ohio Supreme Court. [2]

### Post-Conviction Petition

Petitioner also filed a pro se petition to vacate or set aside judgment of conviction or sentence on November 19, 2020. (Doc. 10, Ex. 15). Petitioner raised the following nine claims in the petition:

1. Trial counsel failed to investigate and present mitigat[ing] evidence to obtain voluntary manslaughter and or reckless homicide into the jury instructions violated my 6th and 14th Amendment rights under the United States Constitution.

2. Trial counsel['s] failure to object to the Brady violation during trial denied my 6th, 14th, and 5th Amendment rights under the United States Constitution.

3. Ineffective assistance of counsel denied 6th and 14th Amendment Rights under the United States Constitution.

---

[2] Petitioner has submitted a letter from the Hamilton County Public Defender and a delayed appeal to the Ohio Supreme Court, both suggesting that petitioner and counsel were not served with the Court of Appeals' decision. (*See* Doc. 12-1 at PageID 234; 12-2 at PageID 237). Assuming in petitioner's favor, without deciding, that failure to notify petitioner of the decision constitutes cause, the undersigned will not rely on procedural default with respect to petitioner's failure to present the ineffective assistance of appellate counsel claims raised in the 26(B) application to the Ohio Supreme Court.

4. I was denied my rights to a fair and impartial trial and due process denied the 14th Amendment rights under the United States Constitution.

5. The State committed a Brady violation used to maliciously prosecute and convict petitioner denied my 4th, 5th, and 14th Amendment rights under the United States Constitution.

6. Trial counsel['s] failure to request competency hearing denied my 6th and 14th Amendment rights under the United States Constitution.

7. Trial court denied my rights to effective assistance of counsel which violated my 6th and 14th Amendment rights under the United States Constitution.

8. Petitioner was denied effective assistance of counsel when the State appointed me a lawyer on my appeal which violated my 6th and 14th Amendment rights under the United States Constitution.

9. Trial court denied the 6th Amendment rights when they did not make witness available to petitioner to have the ability to confront whose confession is offered as evidence against the petitioner.

(*Id.*). On December 29, 2020, the Ohio Court of Appeals dismissed the petition as untimely.

(Doc. 10, Ex. 17).

Petitioner did not seek further review in the Ohio Supreme Court.

### Federal Habeas Corpus

Petitioner initiated the instant federal habeas corpus action on January 19, 2021. (*See*

Doc. 1). Petitioner raises the following four grounds for relief in the petition:[3]

**GROUND ONE**: Ineffective assistance of trial counsel denied my constitutional rights under the 6th and 14 Amendment.

Supporting facts: (1) Trial counsel did not object when the trial court gave the jury instructions. (2) Trial counsel was ineffective when her performance falls below objective standards of reasonable representation. (3) Counsel never told the jury that the State had the burden of proving Ms. Johnson's injury was not caused by an accident.

**GROUND TWO**: Convictions were against the manifest weight of the evidence.

---

[3] As noted by respondent, petitioner includes four grounds for relief, numbered one, two, four, and five. (*See* Doc. 5, 12). The undersigned will address the four grounds for relief as numbered by petitioner.

<u>Supporting facts</u>: (1) Greater weight of the evidence shows that I acted in defense of another in this case my little sister "Tyshara". (2) At the moment the accident occurred Tyshara was being attacked and surrounded by 4 people, 1 being a 6 foot, 200 pound male who was forcefully punching and slamming her to the ground. (3) In this case the jury clearly lost its way in concluding that my actions were not justified.

**GROUND FOUR**: I was denied my rights of due process and of assistance of counsel as by the 6th and 14th Amendment of the United States Constitution.

<u>Supporting facts</u>: (1) Trial counsel was ineffective for failing to request a jury [ ] instruction for an inferior offense degree of manslaughter or voluntary manslaughter. (2) Failing to object to the almost all white jury venire. (3) For not challenging the certification of non disclosure of witnesses and evidence.

**GROUND FIVE**: I was denied my rights of due process and of assistance of counsel as guaranteed by the 6th and 14th Amendment[s] of the United States Constitution.

<u>Supporting facts</u>: (1) I was prejudiced because appellate counsel as ineffective for failing to transmit all transcripts of the proceedings to the appellate court, as only the transcripts that were transmitted to this court were those of the trial and sentencing. (2) Appellate attorney Michael Trapp had not notified me of any decisions or ask me if he may continue to exhaust my state remedies. I was completely unaware of any appeal procedures due to his lack of communication even after my several attempts to contact him via mail and telephone.

(Doc. 5).

Respondent has filed a return of writ in opposition to the petition, to which petitioner has replied. (Doc. 11, 12). According to respondent, petitioner's grounds for relief are not cognizable, procedurally defaulted, and/or without merit.

## III. THE PETITION SHOULD BE DENIED.

In this federal habeas case, the applicable standard of review governing the adjudication of constitutional issues raised by petitioner to the state courts is set forth in 28 U.S.C. § 2254(d). Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

(1) resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established federal law, as determined by the United States Supreme Court; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412–13 (2000)). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599–600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600. As the Sixth Circuit explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* [563] U.S. [170, 181-82], 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court). It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable*. . . . This is a "substantially higher threshold.". . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* [562] U.S. [86, 98-99], 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original). The Supreme Court extended its ruling in *Harrington* to hold that when a state court rules against a defendant in an opinion that "addresses some issues but does not expressly address the federal claim in question," the federal habeas court must presume, subject to rebuttal, that the federal claim was "adjudicated on the merits" and thus subject to the "restrictive standard of review" set out in § 2254(d). *See Johnson v. Williams*, 568 U.S. 289, 292 (2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher*, 565 U.S. 34, 38–40 (2011); *cf. Otte,* 654 F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). In *Greene*, 565 U.S. at 38, the Court explained:

> [W]e held last term in *Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that was

before the state court that adjudicated the prisoner's claim on the merits. We said that the provision's "backward-looking language requires an examination of the state-court decision at the time it was made." *Id.*, at 182, 131 S.Ct. at 1398. The reasoning of *Cullen* determines the result here. As we explained, § 2254(d)(1) requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions *as of 'the time the state court renders its decision.'" Id.*, at 182, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade,* 538 U.S. [at] 71-72 . . .; emphasis added).

Decisions by lower courts are relevant "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010)). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

### A. Ground One

In Ground One of the petition, petitioner claims that trial counsel rendered ineffective assistance by failing to object to jury instructions and failing to inform the jury that the state had the burden of proving the victim's injury was not caused by an accident. (Doc. 5 at PageID 45; Doc. 12 at PageID 215-18). Petitioner raised these claims on direct appeal. Addressing the merits of petitioner's claims, the Ohio Court of Appeals found that trial counsel's failure to request a jury instruction on the defense of accident was sound trial strategy given the evidence presented at trial:

{¶7} The crux of Ms. Elliott's ineffective assistance of counsel claim targets her counsel's alleged failure to request a jury instruction on the defense of accident. Ms. Elliott maintains that, based on her testimony regarding the purported unintentional nature of the stabbing, such an instruction was warranted. A claim of ineffective assistance of counsel requires findings (1) that counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness, and (2) that this inadequacy prejudiced the defendant. *State v. Bradley*, 42 Ohio St.3d 136, 142,

538 N.E.2d 373 (1989).

{¶8} Similar to self-defense, a claim of defense of another acknowledges that the defendant used force that caused harm to another person, but the circumstances justified the actions. *State v. Wenger*, 58 Ohio St.2d 336, 340, 390 N.E.2d 801 (1979) ("[O]ne who intervenes to help a stranger stands in the shoes of the person whom he is aiding[.]"); *State v. Moss*, 10th Dist. Franklin No. 05AP610, 2006-Ohio-1647, ¶ 13 ("Defense of another is a variation of self-defense. Under certain circumstances, one may employ appropriate force to defend another[.]"). Therefore, a successful claim of defense of another legally excuses an otherwise criminal use of force in defending another person. *State v. Williford*, 49 Ohio St.3d 247, 250, 551 N.E.2d 1279 (1990) (defendant could have used reasonable force to defend wife and family, as he would have been entitled to use to defend himself). Conversely, the defense of accident is not an affirmative defense "offered like self-defense to justify admitted conduct * * * . The defense of accident, instead, constitutes a denial or negation of the culpable mental state of the charged offense." *State v. Swan*, 1st Dist. Hamilton No. C-900655, 1991 Ohio App. LEXIS 4815, 1991 WL 207271, *2 (Oct. 9, 1991).

{¶9} In light of the incompatibility between the two defenses, counsel's decision not to request the defense of accident instruction could therefore fall within the bounds of reasonable trial strategy. *State v. Marshall*, 175 Ohio App. 3d 488, 2008-Ohio-955, 887 N.E.2d 1227, ¶ 86 (1st Dist.) ("[W]e hold that counsel engaged in sound trial strategy by not raising self-defense or defense of others * * *. These defenses conflicted with the complete defense * * * presented—that [the defendant] was not the shooter."); *State v. Mohamed*, 151 Ohio St. 3d 320, 2017-Ohio-7468, 88 N.E.3d 935, ¶ 22 (counsel's decision not to request jury instruction was reasonable trial strategy when instruction would undercut the theory of the case); *State v. Schwendeman*, 2018-Ohio-240, 104 N.E.3d 44, ¶ 21-23 (4th Dist.) (sound trial strategy not to request jury instruction considering defense put forth at trial). This is because "[t]he test for a claim of ineffective assistance of counsel is not whether counsel pursued every possible defense; the test is whether the defense chosen was objectively reasonable." *State v. Crawford*, 2d Dist. Montgomery No. 22314, 2008-Ohio-4008, ¶ 29. Faced with Ms. Elliott's own statement, that she admittedly knife-in-hand "swung" at Ms. Johnson, but "accidently" stabbed her, coupled with video of the incident depicting Ms. Elliott approach the victim, bend over and make a deliberate thrusting motion, counsel could have reasonably made a strategic decision to pursue defense of another over that of accident. *See State v. Jones*, 2018-Ohio-239, 104 N.E.3d 34, ¶ 25 (4th Dist.) (counsel's decision not to request jury instruction was reasonable based on defendant's testimony). Indeed, that strikes us as the better hand to play at trial given the evidence.

{¶10} Further bolstering counsel's decision was the proper instruction the jury received as to the necessary mens rea of "knowingly" required for a finding of guilt. "[T]he accident defense is not an excuse or justification for the admitted act," the instruction instead simply "remind[s] the jury that the defendant presented evidence

to negate the element of knowledge." *State v. Stubblefield*, 1st Dist. Hamilton No. C-890597, 1991 Ohio App. LEXIS 610, 1991 WL 17219, *3 (Feb. 13, 1991) (ineffective assistance of counsel where no instruction on accident was requested by counsel *and* court failed to define "knowingly" in jury instruction). Thus, the fact that the jury received the proper instruction as to "knowingly," and then found Ms. Elliott nevertheless culpable, suggests that they rejected any possibility of accident.

{¶11} In sum, under these circumstances, and considering the evidence presented at trial, counsel's decision not to request a jury instruction on defense of accident fell within the ambit of reasonable trial strategy. Counsel's performance was therefore not deficient. *Crawford* at ¶29 ("A reviewing court may not second guess decisions of counsel which can be considered matters of trial strategy."). Furthermore, we need not address whether Ms. Elliott suffered prejudice in light of the finding that counsel's performance met the constitutional standards of adequacy. *Bradley*, 42 Ohio St.3d at 143, 538 N.E.2d 373 ("'[T]here is no reason for a court deciding an ineffective assistance claim * * * to address both components of the inquiry if the defendant makes an insufficient showing on one.'" quoting *Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). We therefore overrule Ms. Elliott's sole assignment of error and affirm the judgment of the trial court.

(Doc. 10, Ex. 8 at PageID 119-122).

As observed by the Ohio appeals court, to establish ineffective assistance of counsel, petitioner must demonstrate both that (1) her trial attorney's conduct was constitutionally deficient; and (2) counsel's deficient performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. at 687. Under the first prong of the *Strickland* test, it must be shown that counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id.* at 688. In determining whether or not counsel's performance was deficient, the Court must indulge a strong presumption that the challenged conduct fell within the wide range of reasonable professional assistance. *Id.* at 689. Under the second "prejudice" prong of the *Strickland* test, petitioner must demonstrate that a "reasonable probability" exists that, but for her counsel's errors, the outcome of the trial would have been different. *See id.* at 694. Petitioner has met her burden if she shows that the result of the trial

would "reasonably likely have been different absent the errors." *Id.* at 695. The Court need not examine the question of whether counsel's performance was deficient before addressing the question of whether petitioner was prejudiced by the challenged conduct. The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner has made an insufficient showing on either ground. *Id.* at 697.

In this case, petitioner maintains that trial counsel was ineffective for failing to object to jury instructions and failing to inform the jury that the state had the burden of proving the victim's injury was not caused by an accident. Specifically, petitioner argues that her testimony that she accidentally stabbed the victim while trying to rescue her sister was inconsistent with counsel's defense-of-another argument. (*See* Doc. 12 at PageID 216). However, upon review of the entire record, the Court finds that the Court of Appeals reasonably determined that petitioner's ineffective assistance of counsel claim was without merit.

It was undisputed at trial that petitioner had a knife and stabbed the victim during the incident. The prosecution introduced two video recordings of the altercation and multiple eye-witnesses, who testified that they observed petitioner stab the victim with a knife. (*See* Doc. 14-1 Trans. at PageID 549-50, 633-34, 653-54, 730, 766). As noted above, the Ohio Court of Appeals indicated that the "video of the incident depict[ed] Ms. Elliot approach the victim, bend over and make a deliberate thrusting motion." (Doc. 10, Ex. 8 at PageID 120-21). (*See also* Doc. 14 at PageID 156 ("in this court's assessment, a video of the incident showed Elliot approach the victim, bend over and make a *deliberate* thrusting motion" (emphasis in original) (internal quotation marks and citation omitted)). Coupled with petitioner's own testimony that she swung at the victim with a knife in hand (*see* Doc. 14, Trans. at PageID 941-42, 950), the

Ohio Court of Appeals reasonably concluded that trial counsel was not ineffective for failing to raise the defense of accident and instead defend on the affirmative defense-of-another defense.[4]

As stated by the Ohio appeals court, the defense of accident is not an excuse or justification for an act, but "constitutes a denial or negation of the culpable mental state of the charged offense." (Doc. 14, Ex. 8 at PageID 119-20 (citation omitted). A claim of defense of another, by contrast, "acknowledges that the defendant used force that caused harm to another person, but the circumstances justified the actions." (*Id.* (citing *State v. Wegner*, 390 N.E. 2d 801 (1979)). In that regard, defense counsel acknowledged that petitioner stabbed the victim during the fight, but argued that petitioner did so to protect her sister. The defense presented evidence that the petitioner's sister was outnumbered (*see* Doc. 14-1, Trans. at PageID 573), was being attacked by a larger male (*id.* at PageID 569-70, 904-905), and argued that petitioner had a reasonable basis to fear that her sister was facing serious physical harm if she did not intervene.[5] (*See Id.* at PageID 571, 904-905, 941-42, 948-50). Given the evidence admitted at trial and petitioner's testimony that she acted to protect her sister, the Ohio Court of Appeals reasonably concluded that defense counsel's decision to proceed with a defense-of-another defense was the result of a reasonable trial strategy.

---

[4] Based on its review of petitioner's manifest weight of evidence claim in petitioner's 26(B) application to reopen, the Ohio Court of Appeals determined that petitioner's claim that she had accidentally stabbed the victim was undermined by the record, which it concluded contained "substantial credible evidence that Elliot had caused the victim's death as a proximate result of knowingly causing serious physical harm or causing or attempting to cause physical harm with a deadly weapon." (*See* Doc. 10, Ex. 14 at PageID 156-57).

[5] For example, in closing arguments defense counsel argued as follows: "Again, we have that first swing at [petitioner's sister], big man, 200 pounds. These girls are fighting. Markeisha is not fighting with anybody. Where over here, he's punching on [petitioner's sister], and throws her on the ground where her head hits the concrete. If that wouldn't scare you. That's a scary sight. And Markeisha said, she was afraid for her sister, when that was going on, when Baby D is over her -- and you can see his arm coming back, and then pulling her up and throwing her out in the street like a rag doll. She was in harm's way. She was in imminent or immediate danger of death or great bodily harm. If her head had hit that curb a little bit harder, we may have had two of them deceased here. . . . This is a defense of other case. She stopped the fight. She stopped the harm to her sister." (Doc. 14-1, Trans. at PageID 983-84).

Finally, with respect to petitioner's claim that trial counsel was ineffective for failing to inform "the jury that the State had the burden of proving [the victim]'s injury was not caused by an accident," (Doc. 5 at PageID 45), the jury was instructed that the State has the burden to prove every essential element beyond a reasonable doubt.  (Doc. 14-1, Trans. at PageID 994). Furthermore, the trial court instructed that in order to find petitioner guilty of murder or aggravated assault, they must find that petitioner acted "knowingly," which it defined as follows: "A person acts knowingly, regardless of her purpose, when she is aware that her conduct will probably cause a certain result or she is aware that her conduct will probably be of a certain nature."  (*Id.* at PageID 1002).  Consistent with petitioner's testimony that her stabbing of the victim was an accident, defense counsel argued that petitioner did not knowingly intend to cause harm to the victim.  (*See id.* at 497 ("She didn't intend to kill anyone.  She didn't really intend to hurt anyone.  What she was trying to do is get her sister out of danger . . .")).

Upon review of the state court record in this case, the Court concludes that the Ohio Court of Appeals reasonably determined that trial counsel's defense and/or failure to request a jury instruction on the defense of accident did not amount to ineffective assistance of counsel. Because petitioner has failed to demonstrate that the Ohio appeals court's adjudication of her claim was contrary to or involved and unreasonable application of Supreme Court precedent, petitioner is not entitled to federal habeas relief based on Ground One of the petition.

## B.  Ground Two

In Ground Two of the petition, petitioner argues that her convictions were against the manifest weight of the evidence.

Petitioner is not entitled to habeas relief on the basis of her manifest weight of the evidence claim.  A "manifest weight of evidence" claim, which is based on a state law concept

that is "both quantitatively and qualitatively different" from a constitutional due process sufficiency of evidence standard, *see Tibbs v. Florida,* 457 U.S. 31, 41-47 (1982), and *State v. Thompkins*, 678 N.E.2d 541, 546 (1997), *superseded by state constitutional amendment on other grounds in State v. Smith*, 684 N.E.2d 668 (1997), raises an issue of state law only that is not cognizable in a federal habeas corpus proceeding such as this. *See* 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984).

The Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those who have been convicted without proof sufficient to allow a rational trier of fact to find guilt beyond a reasonable doubt. *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir. 1983). In the context of a claim alleging a violation of due process, "sufficiency of the evidence" refers to the due process requirement that there be enough evidence introduced in favor of the prosecution for a rational trier of fact to find each element of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).[6]

However, under Ohio law, a claim that a verdict was against the manifest weight of the evidence–as opposed to one based upon insufficient evidence–requires the appellate court to act as a "thirteenth juror" and to review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 485 N.E.2d 717, 720 (1st Dist. Ohio 1983); *cf. Tibbs v. Florida*, 457 U.S. 31 (1982). "Since a federal habeas court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, petitioner's claim that [her] convictions were against the manifest weight of the evidence cannot be considered by this

---

[6] The undersigned notes that at no point during the state court proceedings or in the instant action has petitioner raised a sufficiency of evidence claim.

Court." *Mason v. Brunsman*, No. 1:07-cv-1020, 2009 WL 2169035, at *29 (July 16, 2009 S.D.

Ohio ) (Spiegel, J.; Black, M.J.). Accordingly, petitioner is not entitled to habeas relief based on

her manifest weight of the evidence claim raised in Ground Two.

## C. Grounds Four and Five

In Ground Four petitioner claims that her trial counsel was ineffective for failing to

request a jury instruction on voluntary manslaughter, failing to object to the jury venire, and not

challenging the "certification of non disclosure of witnesses and evidence." (Doc. 5 at PageID

50). In Ground Five, petitioner challenges appellate counsel's failure to transmit all transcripts

of the proceedings to the appellate court.[7] (*See* Doc. 12 at PageID 232).

In recognition of the equal obligation of the state courts to protect the constitutional rights

of criminal defendants, and in order to prevent needless friction between the state and federal

courts, a state defendant with federal constitutional claims must fairly present those claims to the

state courts for consideration before raising them in a federal habeas corpus action. *See* 28

U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard*

*v. Connor,* 404 U.S. 270, 275-76 (1971). In order to satisfy the fair presentation requirement, the

claims asserted in the federal habeas petition must be based on the same facts and same legal

theories that were presented to the state courts. *Carter v. Mitchell*, 693 F.3d 555, 568 (6th Cir.

2012) (citing *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Wong v. Money*, 142 F.3d

313, 322 (6th Cir. 1998)). Moreover, a claim is deemed fairly presented only if the petitioner

presented her constitutional claims for relief to the state's highest court for consideration. *See*

*O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483

---

[7] As discussed below, in Ground Five petitioner claims that appellate counsel was ineffective for failing to provide transcripts with respect to the certification of nondisclosure claim raised in Ground Four. Petitioner also claims that her appellate counsel was ineffective for failing to notify her of state-court decisions in her case or communicating with petitioner regarding exhaustion of state-court remedies.

16

(6th Cir. 1990); *Leroy v. Marshall*, 757 F.2d 94, 97, 99-100 (6th Cir. 1985). If the petitioner fails to fairly present her constitutional claims through the requisite levels of state appellate review to the state's highest court, or commits some other procedural default that prevents a merit-based review of the federal claims by the state's highest court, she may have waived the claims for purposes of federal habeas review. *See O'Sullivan*, 526 U.S. at 847-48; *Harris v. Reed*, 489 U.S. 255, 260-62 (1989); *McBee v. Grant*, 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz*, 888 F.2d 1097, 1099 (6th Cir. 1989).

It is well-settled under the procedural default doctrine that the federal habeas court may be barred from considering an issue of federal law from a judgment of a state court if the judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *See Harris*, 489 U.S. at 260-62. The Supreme Court has stated:

> In all cases in which a state prisoner has defaulted h[er] federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman*, 501 U.S. at 750, if she fails to present an issue to a state appellate court at her only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or if she fails to comply with a state procedural rule that required her to have done something to preserve the issue for appellate review. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

The Sixth Circuit employs a three-prong test, which was initially established in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), to determine if a claim is procedurally defaulted under

17

the adequate and independent state ground doctrine:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

*Hoffner v. Bradshaw*, 622 F.3d 487, 495 (6th Cir. 2010) (quoting *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001) (in turn quoting *Maupin*)); *see also Johnson v. Bradshaw*, 493 F. App'x 666, 669 (6th Cir. 2012). Under *Maupin* and as discussed above, if the three prerequisites are met for finding a claim is procedurally defaulted under the adequate and independent state ground doctrine, federal habeas corpus review of the defaulted claim is precluded unless the petitioner can demonstrate cause for and prejudice from her procedural default or that failure to consider the defaulted claim will result in a "fundamental miscarriage of justice." *Hoffner*, 622 F.3d at 495 (citing *Maupin*, 785 F.2d at 138); *Johnson,* 493 F. App'x at 669. *See also Coleman*, 501 U.S. at 750; *Harris,* 489 U.S. at 262; *Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, petitioner procedurally defaulted her ineffective assistance of trial counsel claims in Ground Four by failing to raise the claims on direct appeal. Ohio law provides that an issue not raised on direct appeal is barred by the doctrine of *res judicata. See State v. Perry,* 226 N.E.2d 104, 105–06 (Ohio 1967) (syllabus); *State v. Combs,* 652 N.E.2d 205, 209 (Ohio App. 1st Dist. 1994) (holding that *res judicata* stops post-conviction relief for claims that could have been raised on direct appeal). The Sixth Circuit Court of Appeals has consistently recognized that under Ohio law an issue that is not raised by a petitioner on direct appeal is subsequently barred from review based on the doctrine of *res judicata. See, e.g., Norris v. Schotten,* 146 F.3d 314, 332 (6th Cir. 1998) (recognizing the procedural default of a claim in a habeas petition where

18

appellant never raised the claim on direct appeal to the Ohio Court of Appeals and the Ohio

Supreme Court); *Rust,* 17 F.3d at 160–61 (finding adequate and independent state procedural

rule where new claims raised in his second motion for leave to file a delayed direct appeal were

barred by the Ohio Court of Appeals as *res judicata* because the petitioner had opportunity to

raise constitutional claims during delayed direct appeal but failed to do so); *Leroy,* 151 F.2d at

100 (holding as adequate and independent state grounds the procedural default of claims raised

for the first time in a petition for writ of habeas corpus on the basis of *res judicata* where

petitioner failed to raise those claims in his direct appeal to the Ohio Court of Appeals and to the

Ohio Supreme Court).[8]

As cause for the default, in her application to reopen her appeal petitioner argued her

appellate counsel was ineffective for failing to raise these claims as assignments of error on

direct appeal. (*See* Doc. 10, Ex. 10, 12). Ineffective assistance of appellate counsel can provide

cause for a procedural default unless the ineffective assistance of appellate counsel claim was

itself procedurally defaulted.[9] *See Murray,* 477 U.S. at 488-89. *See also Edwards v. Carpenter*,

529 U.S. 446, 452 (2000); *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). In order

for the ineffective assistance of appellate counsel to serve as cause to excuse a procedural default

petitioner must show that appellate counsel's failure to raise the claims rose to the level of a

constitutional violation under *Strickland v. Washington*, 466 U.S. 668 (1984). *McFarland v.*

*Yukins,* 356 F.3d 688, 699 (6th Cir. 2004). Under *Strickland*, petitioner must demonstrate a

reasonable probability that inclusion of the issue would have changed the result of the appeal.

---

[8] Petitioner has also procedurally defaulted any claims raised in her November 19, 2020 post-conviction petition (Doc. 10, Ex. 15), by filing an untimely petition (*See* Doc. 10, Ex. 17 (denying the petition as untimely)) and failing to appeal the decision to the Ohio Supreme Court.

[9] As noted above, *see supra* n.2, petitioner did not appeal the denial of her 26(B) application to the Ohio Supreme Court. However, because it appears that petitioner and counsel were not served with the Ohio Court of Appeals' decision, the Court will not consider petitioner's ineffective assistance of appellate counsel claims defaulted.

*McFarland*, 356 F.3d at 699.  Accordingly, in evaluating the ineffective assistance of appellate

counsel claim, the Court must assess the strength of the claims that appellate counsel failed to

raise.  *See Wilson v. Parker,* 515 F.3d 682, 707 (6th Cir. 2008).  "If there is a reasonable

probability that [the petitioner] would have prevailed on appeal had the claim been raised, we

can then consider whether the claim's merit was so compelling that appellate counsel's failure to

raise it amounted to ineffective assistance of appellate counsel that would excuse [petitioner's]

procedural default."  *McFarland*, 515 F.3d. at 700.

In denying petitioner's application to reopen her appeal, the Ohio Court of Appeals

determined that the proposed assignments of error would not have presented a reasonable

probability of success had counsel raised them on appeal:

> In her second and third proposed assignments of error, Elliot challenges her trial
> counsel's failure to request, and the trial court's failure to deliver, a jury instruction
> on voluntary manslaughter as an offense of inferior degree to the charged offense
> of felony murder.  The evidence showed that Elliot had caused the victim's death
> as a proximate result of knowingly causing serious physical harm or causing or
> attempting to cause physical harm with a deadly weapon.  There was no evidence
> that she had actually acted while "under the influence of sudden passion or in a
> sudden fit of rage," or that her conduct was in reaction to "serious provocation" by
> the victim that was "sufficient to arouse the passions of an ordinary person beyond
> the power of his or her control."  *See* R.C. 2903.03(A) (defining voluntary
> manslaughter); *State v. Shane*, 63 Ohio  St.3d 630, 635, 590 N.E.2d (1992) (holding
> that a voluntary-manslaughter conviction requires proof that the defendant
> "actually [acted] under the influence of sudden passion or in a sudden fit of rage,"
> and that the victim's "provocation" was "sufficient to arounds the passions of an
> ordinary person beyond the power of his or her control").  Even if the evidence
> could have supported such and instruction, based on the record at hand, it appears
> to be reasonable trial strategy not to request such an instruction given the
> incongruity with her testimony about an "accident".
>
> Elliott challenges, in her third proposed assignment of error, her trial counsel's
> effectiveness in failing to object to the racial composition of her jury.  But the record
> is devoid of evidence that the absence of African Americans from Elliott's jury was
> "due to systematic exclusion of the group in the jury-selection process."  *Duren v.
> Missouri*, 439 U.S. 357, 364, 99 S. Ct. 664, 58 L.Ed.2d 579 (1979), applied and
> followed in *State v. Fulton*, 57 Ohio St.3d 129, 566 N.E.2d 1185 (1991), paragraph
> two of the syllabus.  Without a developed record on the races of the jurors and any

alleged problems in the composition of the venire, this aspect of the third assignment of error does not present a viable claim for relief.

Finally, in her third and fourth proposed assignments of error, Elliott challenges the state's Crim. R. 16(D) certification of nondisclosure, her trial counsel's effectiveness concerning certification, and her appellate counsel's effectiveness in failing to provide a transcript of proceedings to support an assignment of error challenging the certification. But Elliott concedes that, in the absence of a transcript of the Crim. R. 16(F) hearing, "there is nothing in the record to review to determine if there were any errors at th[at] hearing." This argument resorts to speculation rather than something tangible in the record that we can review.

Because the proposed assignments of error would have offered no reasonable probability of success had counsel advanced them on appeal, Elliott has failed to demonstrate a genuine issue as to whether she as a colorable claim of ineffective assistance of appellate counsel. Accordingly, the court denies her application to reopen her appeal.

(Doc. 10, Ex. 14 at PageID 157-58).

Petitioner has failed to demonstrate that the Ohio Court of Appeals' decision was contrary to or involved and unreasonable application of Supreme Court precedent. As to her claim regarding a voluntary manslaughter jury instruction, upon careful review of the entire record in this case, the undersigned finds that the Ohio Court of Appeals' reasonably determined that insufficient evidence was offered to suggest that petitioner acted under the influence of sudden passion or in a sudden fit of rage, as required for voluntary manslaughter. *See* Ohio Rev. Code § 2903.03(A). *See also State v. Sanders*, No. 2018-CA-00004, 2019 WL 126877, at *4 (Ohio App. 5 Dist. Jan 7, 2019) ("In order to warrant an instruction on voluntary manslaughter, a defendant must . . . show that [s]he was under the influence of sudden passion or in a sudden fit of rage which was brough about by provocation that was sufficient to arouse the passions of an ordinary person beyond the power of his or her control.") (quotation marks omitted). To the contrary, and as detailed above, petitioner testified that she did not intend to stab the victim and the defense sought to establish that she acted to protect her sister. *See State v. Ramirez*, No. L-

21

17-1076, 2020 WL 4383602, at *10 (Ohio App. 6 Dist. July 31, 2020) (noting that "evidence that the offender used deadly force because [s]he . . . feared for the personal safety of other (defense of another), does not constitute sudden passion or a fit of rage as contemplated by the voluntary manslaughter statute").

The Ohio Court of Appeals also reasonably found petitioner's claim that counsel was ineffective for failing to challenge the racial composition of her jury was without merit. As she does in this action, in support of her application to reopen her appeal, petitioner claimed trial counsel was ineffective for failing to object after a black juror was excused for cause and the remaining juror members were all white. (*See* Doc. 12 at PageID 231).[10]

It is well-settled that "[t]he Sixth Amendment secures to criminal defendants the right to be tried by an impartial jury drawn from sources reflecting a fair cross section of the community." *Berghuis v. Smith*, 559 U.S. 314, 319 (2010) (citing *Taylor v. Louisiana*, 419 U.S. 522 (1975)). In order to establish a *prima facie* violation of the Sixth Amendment's fair-cross-section requirement, the defendant must show: "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Id.* (quoting *Duren v. Missouri*, 439 U.S. 357, 364 (1979)). To establish "systematic exclusion" under the third prong of the test, the defendant must show that the underrepresentation of a distinctive group in the community is "inherent in the particular jury-selection process utilized." *Duren*, 439 U.S. at 366; *see also United States v. Suggs*, 531 F.

---

[10] Petitioner does not contend that the black juror was improperly excused on the basis of race. To the contrary, at trial the juror was jointly released for cause by the prosecution and defense for medical reasons, after the juror exhibited hearing problems and was sleeping in voir dire. (Doc. 14-1, Trans. at PageID 336-44).

App'x 609, 619 (6th Cir. 2013). Once a defendant establishes a *prima facie* case, the inquiry does not end because the burden then shifts to the government, which has the opportunity to justify the infringement "by showing attainment of a fair cross section to be incompatible with a significant state interest." *See Duren*, 439 U.S. at 368; *Suggs*, 531 F. App'x at 619.

In this case, it was reasonable for the Ohio Court of Appeals to find no merit to petitioner's claim in the absence of any evidence in the record even remotely indicating, as required under the second and third prongs of the *Duren* test, that African-Americans were not fairly represented in the venire from which the petit jury was chosen or that any underrepresentation was due to a systematic exclusion of African-Americans from the jury selection process. Petitioner's claim that her particular jury panel did not constitute a fair cross-section of the community is insufficient to establish the second and third elements of a *prima facie* case. *Cf. United States v. Allen*, 160 F.3d 1096, 1103 (6th Cir. 1998) (rejecting the contention that the defendants had met their burden of proof by showing their particular jury panel contained no African-Americans); *Suggs*, 531 F. App'x at 619 (citing *Allen* and *United States v. Odeneal*, 517 F.3d 406, 412 (6th Cir. 2008)) ("It is incumbent upon the defendant to show more than that a particular jury panel was unrepresentative."); *United States v. Smith*, 463 F. App'x 564, 571 (6th Cir. 2012) (citing *Allen* and *Ford v. Seabold*, 841 F.2d 677, 685 (6th Cir. 1988)) (pointing out that the Supreme Court "has not held that a defendant is entitled to a jury of any particular racial composition" and that "systematic exclusion" cannot be inferred "[m]erely because the percentage of a distinctive group selected in a single venire does not mirror the percentage of the group in the entire community"). *See also Berghuis*, 559 U.S. at 319, 333 (in a case where the defendant was tried by an all-white jury, the Supreme Court upheld the state court's rejection of a fair-cross-section claim on the ground that the decision was "consistent

with *Duren*" and did not involve an unreasonable application of clearly established federal law).

Finally, the Ohio Court of Appeals also reasonably found petitioner's claims regarding the trial court's certification of nondisclosure ruling and appellate counsel's failure to provide transcripts—as raised in Ground Five of the petition—to be without merit. At no point in the state court proceedings or in the instant action has petitioner specified what error was allegedly committed by the trial court with respect to the certification of nondisclosure ruling, much less how she was prejudiced by the trial court's ruling, trial counsel's failure to challenge the ruling, or appellate counsel's failure to provide transcripts. (*See* Doc. 5 at PageID 50, 53; Doc. 12 at PageID 230-232; Doc. 10, Ex. 12 at PageID 141-142). *See Strickland*, 466 U.S. at 694. Petitioner's sole argument in this regard is her speculation that due to the ineffective assistance of appellate counsel she "was potentially prejudiced." (Doc. 10, Ex. 12 at PageID 142). Petitioner has thus failed to demonstrate that the Ohio Court of Appeals' decision finding her ineffective assistance of appellate counsel claims regarding the certification of nondisclosure was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. [11]

Accordingly, because petitioner's ineffective assistance of appellate counsel claims are without merit, they do not serve as cause for the procedural default of the underlying ineffective assistance of counsel claims raised in Ground Four. Furthermore, because petitioner has not otherwise demonstrated that a fundamental miscarriage of justice will occur if her procedurally-defaulted claims for relief are not considered or, in other words, that the alleged errors "probably

---

[11] As with petitioner's claim that trial counsel was ineffective for failing to provide transcripts regarding the certification of nondisclosure, petitioner has failed to demonstrate that she was prejudiced based on her claim that her appellate counsel on direct appeal failed to notify her of decisions, exhaust her remedies, or communicate with her, as asserted in Ground Five of the petition. *See Strickland*, 466 U.S. at 694. Counsel for petitioner exhausted her direct appeal claim by filing a timely appeal to the Ohio Supreme Court. (*See* Doc. 10, Ex. 9). Petitioner otherwise provides not basis to conclude she was prejudiced by appellate counsel.

resulted in the conviction of one who is actually innocent," *see Murray,* 477 U.S. at 495–96. *See also Schlup v. Delo,* 513 U.S. 298, 327 (1995); *Bonilla,* 370 F.3d at 498, petitioner has procedurally defaulted and waived the claims raised in Ground Four of the petition. Having determined that Ground Five of the petition is also without merit, petitioner is not entitled to federal habeas relief based on Grounds Four and Five of the petition.

Accordingly, in sum, the undersigned concludes that petitioner is not entitled to habeas relief. Having found that petitioner's grounds for relief are without merit, not cognizable, or procedurally defaulted and waived the petition should be **DENIED** with prejudice.

## IT IS THEREFORE RECOMMENDED THAT:

1. The petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 5) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims alleged in the petition, which have been addressed on the merits herein, because petitioner has not stated a "viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)). *See also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

A certificate of appealability should not issue with respect to the claims alleged in the petition, which this Court has concluded are waived and thus procedurally barred from review, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484–85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling.[12]

---

[12] Because this Court finds that the first prong of the *Slack* standard has not been met in this case, it need not address the second prong of *Slack* as to whether or not "jurists of reason" would find it debatable whether petitioner has

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

Date: 5/13/2023

Karen L. Litkovitz
United States Magistrate Judge

---

stated a viable constitutional claim in any of her grounds for relief. *See Slack*, 529 U.S. at 484.